GRUBE OREHOSKI, PLLC
Joseph A. Grube, OSB # 972976
joe@go-trial.com
1200 Fifth Avenue, Suite 1711
Seattle, Washington 98101
Phone: (206) 624-5975
Fax: (206) 770-7607

SAUDER SCHELKOPF LLC
Joseph G. Sauder (to be admitted pro hac vice)
jgs@sstrialawyers.com
Joseph B. Kenney (to be admitted pro hac vice)
jbk@sstriallawyers.com
Melissa J. Stewart (to be admitted pro hac vice)
mjs@sstrialawyers.com
1109 Lancaster Avenue
Berwyn, PA 19312
Phone: (610) 200-0581

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**EUGENE DIVISION**

| | |
|---|---|
| D.H., | NO. |
| Plaintiff, | **COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| OREGON YOUTH AUTHORITY, MARCIA ADAMS, FARIBORZ PAKSERESHT, and DAN BERGER, | |
| Defendants. | |

Plaintiff D.H., by and through his attorneys, brings this action against the Oregon Youth Authority, Marcia Adams, Fariborz Pakseresht, and Dan Berger, (collectively "Defendants"). Plaintiff alleges the following based on (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief:

COMPLAINT AND JURY DEMAND
PAGE 1 OF 11

**PARTIES**

1.      Plaintiff D.H. is a 25-year-old resident of California proceeding under his initials to protect his privacy. At all times relevant to this Complaint, Plaintiff D.H. was in the physical and legal custody of the Oregon Youth Authority.

2.      Defendant Oregon Youth Authority ("OYA") is an agency of the State of Oregon. OYA operates juvenile corrections facilities across Oregon where children are housed and treated, including the MacLaren Youth Correctional Facility. Under the Oregon Tort Claims Act, OYA is subject to liability for the torts of its officers, employees, and agents acting within the scope of their employment duties.

3.      Defendant Marcia Adams was the assistant Director of Health Services at OYA beginning in 2011. In 2017 she became the supervising physician at OYA, and in 2018 she was named the Director of Health Services, a position she still holds today. Defendant Adams was Dr. Edwards's supervisor from 2017 until he resigned. At all times relevant to this Complaint, Defendant Adams acted within the scope of her employment with OYA. Defendant Adams is sued in her individual capacity.

4.      Defendant Fariborz Pakseresht was the Director of OYA from 2012 through 2017. At all times relevant to this Complaint, Defendant Pakseresht acted within the scope of his employment with OYA. Defendant Pakseresht is sued in his individual capacity.

5.      Defendant Dan Berger was employed as the Superintendent of MacLaren from 2014 through 2025. At all times relevant to this Complaint, Defendant Berger acted within the scope of his employment with OYA. Defendant Berger is sued in his individual capacity.

6.      Defendants Adams, Pakseresht, and Berger are collectively referred to herein as the "Individual Defendants."

GRUBE || OREHOSKI PLLC
1200 FIFTH AVENUE, SUITE 1711
SEATTLE, WASHINGTON 98101
(206) 770-7606 • FAX (206) 770-7607

## JURISDICTION AND VENUE

7.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) on the grounds that the claims herein arise under Section 1983. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) in that the claims are so related that they form part of the same case or controversy.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)-(c) on the grounds that all or a substantial portion of the acts giving rise to the violations alleged herein occurred in this judicial district.

## FACTUAL ALLEGATIONS

**"Dr. Cold Fingers"**

9.      Dr. Edward Gary Edwards began working for the OYA in 1977 as a pediatrician providing medical examinations and treatment to youth incarcerated at MacLaren. He remained employed by OYA until at least 2017.

10.     On information and belief, Edwards was the primary medical provider at MacLaren through at least 2017. He was the only doctor working on site full-time during his years at MacLaren and oversaw medical care for all the youth at the facility. Every minor who entered MacLaren was required to undergo an intake examination and periodic physicals. MacLaren's clinic was the only on-site source of medical care for youths, so all minor residents were required to have contact with Edwards during their time there.

11.     Edwards gained a reputation for molesting minor boys with ungloved hands during intake exams, physicals, and other medical visits. The molestation included digital penetration, as well as stroking and fondling the genitalia of the children he was supposed to be

GRUBE || OREHOSKI PLLC
1200 FIFTH AVENUE, SUITE 1711
SEATTLE, WASHINGTON 98101
(206) 770-7606 • FAX (206) 770-7607

treating. Edwards would often make sexually suggestive comments during the abuse, saying things such as "I bet you like that" to the child he was molesting.

12.     This abuse occurred in Edwards's exam room where he was permitted to be alone with minors with no nurse or chaperone present.

13.     Edwards's reputation for sexual abuse was so ubiquitous that he was known as "Dr. Cold Fingers" by youth and OYA staff.

14.     MacLaren staff made jokes about Edwards in front of minor residents, and would even threaten to send minors to "Dr. Cold Fingers" if they did not comply with staff instructions.

15.     On information and belief, children at MacLaren began reporting Edwards's conduct to MacLaren staff as early as 1999. Staff members responded by ignoring complaints, or by justifying Edwards's conduct by telling victims that he was a doctor and therefore what he was doing was medically appropriate.

16.     Staff and administrators, including Defendants Adams, Pakseresht, and Berger were aware of Edwards's reputation as "Dr. Cold Fingers." Defendants had actual notice of Edwards's misconduct because of his reputation as "Dr. Cold Fingers" and the many reports of abuse from residents at MacLaren.

17.     Despite this, staff and administrators at OYA, including Defendants, took no action to protect youth from Edwards's sexual abuse. Edwards remained employed at MacLaren for four decades, where he was permitted to continue examining children without a nurse or chaperone present.

**Dr. Edwards's Abuse of Plaintiff**

COMPLAINT AND JURY DEMAND
PAGE 4 OF 11

GRUBE || OREHOSKI PLLC
1200 FIFTH AVENUE, SUITE 1711
SEATTLE, WASHINGTON 98101
(206) 770-7606 • FAX (206) 770-7607

18.    Plaintiff was in the custody of OYA beginning around age 13. He was housed at a number of OYA facilities, including MacLaren Youth Correction Facility.

19.    Between 2014-2018, prior to turning 18 years old, Plaintiff was subjected to repeated sexual abuse by Dr. Edwards.

20.    The abuse occurred at MacLaren, in Edwards's exam room and during his normal working hours. Edwards used and manipulated his position and authority as a medical professional and his regular duties of examining and treating residents at MacLaren to get Plaintiff alone so that Edwards could abuse him. The abuse was the direct outgrowth of conduct that was within the scope of Edwards's duties.

21.    A pattern of abuse emerged. Dr. Edwards would call Plaintiff into the clinic, instruct him to remove his clothing, and subject him to invasive and unnecessary examinations. This included groping him and making sexually suggestive comments.

22.    During these encounters, Edwards made sexualized comments to Plaintiff such as "I bet you like that" and "only play you're going to get."

23.    Edwards also threatened and intimated Plaintiff. He told him to "keep his mouth shut" and threatened to have him placed in isolation if he resisted or reported the abuse. As a result, Plaintiff felt powerless and feared retaliation, which prevented him from reporting the abuse at the time.

24.    Only in the last 2 years, after the news broke about Edwards's misconduct and other survivors began to file lawsuits, did Plaintiff understand that the Individual Defendants covered up Edwards' pervasive sexual abuse of those in OYA's custody and care and failed to stop it.

25.    Plaintiff could not consent to any of these horrendous acts that he was forced to

COMPLAINT AND JURY DEMAND
PAGE 5 OF 11

GRUBE || OREHOSKI PLLC
1200 FIFTH AVENUE, SUITE 1711
SEATTLE, WASHINGTON 98101
(206) 770-7606 • FAX (206) 770-7607

suffer through.

26.     The abuse caused substantial harm to Plaintiff's mental, physical, and emotional well-being. He has a lasting fear of medical providers, which makes seeking out necessary medical treatment an anxiety-ridden and traumatic experience. The trauma from the abuse has negatively impacted his ability to function in his daily life and his relationships.

**CAUSES OF ACTION**

**COUNT I**

**42 U.S.C. § 1983**

**Failure to Protect in Violation of the Eighth Amendment**

**Against the Individual Defendants**

27.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

28.     Upon information and belief, Defendants Adams, Pakseresht, and Berger were aware of Edwards's abusive conduct, and that Edwards was known as "Dr. Cold Fingers." Defendants had actual knowledge that Edwards had abused and was continuing to abuse minor children at MacLaren, because, upon information and belief, residents reported the abuse to staff and administrators starting in 1999.

29.     Upon information and belief, Defendants knew that Dr. Edwards regularly examined children alone in his exam room, without any nurse or chaperone present, thus giving him ample opportunity to sexually abuse them.

30.     By the time Plaintiff arrived at MacLaren, Edwards had been systematically abusing children for more than a decade.

31.     Upon information and belief, it was obvious to Defendants that Edwards would continue to sexually abuse minor residents at MacLaren unless Defendants took action to stop

GRUBE || OREHOSKI PLLC
1200 FIFTH AVENUE, SUITE 1711
SEATTLE, WASHINGTON 98101
(206) 770-7606 • FAX (206) 770-7607

him.

32.     Despite knowing of the substantial risk to Plaintiff and other residents, Defendants took no action to prevent Edwards from continuing to sexually abuse children in the care of MacLaren. Upon information and belief, they did not terminate Edwards's employment, investigate the reports of abuse, change its policies, or require a third person in the room when Edwards was examining patients.

33.     The Individual Defendants' failure to act exposed Plaintiff to a substantial risk of serious harm, the consequences of which he lives with to this day.

34.     Less than two years have elapsed since Plaintiff's discovery of his claim against the Individual Defendants, when reports surfaced of Edwards' abuse and the years of coverups surrounding that abuse by Individual Defendants.

35.     Defendants' failure to protect Plaintiff from Edwards's heinous actions constitutes a violation of Plaintiff's rights under the Eighth Amendment to the United States Constitution.

## COUNT II

### Negligence

### Against Individual Defendants

36.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

37.     Defendants Adams, Pakseresht, and Berger owed a duty of care to Plaintiff, who was a minor child entrusted to the custody of OYA, to provide a safe environment with adequate protection, supervision, and care.

38.     Defendants knew that Dr. Edwards was known as "Dr. Cold Fingers." Defendants knew or should have known that Edwards had abused and was continuing to abuse

COMPLAINT AND JURY DEMAND
PAGE 7 OF 11

minor children at MacLaren, because residents had been reporting the abuse to staff and administrators since 1999.

39.     Defendants took no actions to prevent Edwards from abusing Plaintiff and other residents. They did not terminate Edwards's employment, investigate the reports of abuse, or change policies to require a third person in the room when Edwards was examining patients.

40.     Defendants' failure to act unreasonably created a foreseeable risk that Plaintiff, a male minor child at MacLaren, would also be abused by Edwards.

41.     As a direct result of Defendants' negligence, Plaintiff has suffered economic and noneconomic damages.

## COUNT III
### Battery – Oregon Tort Claims Act
### Against Defendant OYA

42.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

43.     Dr. Edwards, acting in the course and scope of his employment with Defendant OYA, engaged in harmful and offensive touching of Plaintiff, including molesting Plaintiff's genitals. Plaintiff, a minor child at the time of the abuse, did not and could not consent to Edwards's actions.

44.     The abuse occurred at MacLaren in Edwards's exam room and during his normal working hours.

45.     Edwards used and manipulated his position and authority as a medical professional and his regular duties of examining and treating residents at MacLaren to get Plaintiff alone so that Edwards could abuse him. The abuse was the direct outgrowth of conduct that was within the scope of Edwards's duties.

GRUBE || OREHOSKI PLLC
1200 FIFTH AVENUE, SUITE 1711
SEATTLE, WASHINGTON 98101
(206) 770-7606 • FAX (206) 770-7607

46.     Defendant OYA is therefore vicariously liable for batteries perpetrated on Plaintiff by Edwards.

47.     As a direct result of Edwards's batteries, Plaintiff has suffered economic and noneconomic damages.

## COUNT IV

### Intentional Infliction of Emotional Distress – Oregon Tort Claims Act
### Against Defendant OYA

48.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

49.     Edwards knowingly and intentionally caused severe emotional distress to Plaintiff when he sexual molested and abused him, as described above. Sexual abuse of a child is beyond the bounds of all socially tolerable conduct, and Plaintiff did in fact suffer severe emotional distress as a result of this sexual abuse.

50.     Edwards used and manipulated his position and authority as a medical professional and his regular duties of examining and treating residents at MacLaren to get Plaintiff alone so that Edwards could abuse him. The abuse was the direct outgrowth of conduct that was within the scope of Edwards's duties.

51.     Defendant OYA is therefore vicariously liable for Edwards's conduct.

52.     As a direct result of Edwards's intentional infliction of emotional distress upon Plaintiff, Plaintiff has suffered economic and noneconomic damages.

## COUNT V

### Negligence under the Oregon Tort Claims Act
### Against Defendant OYA

53.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

COMPLAINT AND JURY DEMAND
PAGE 9 OF 11

GRUBE || OREHOSKI PLLC
1200 FIFTH AVENUE, SUITE 1711
SEATTLE, WASHINGTON 98101
(206) 770-7606 • FAX (206) 770-7607

54.     Defendant OYA, having custody of Plaintiff and acting *in loco parentis* during the period of his confinement, had a special relationship with Plaintiff. As Plaintiff's legal and physical guardian, Defendant owed Plaintiff a heightened duty of care to provide a safe environment and to protect him from abuse and injury while in OYA's care.

55.     Defendant's conduct created a foreseeable risk of harm to Plaintiff in one or more of the following ways:

A.  Allowing Edwards to examine minor children alone in his exam room without a nurse or other chaperone present;

B.  Failing to investigate or otherwise take any action in response to reports of Edwards's sexual abuse of minors;

C.  Failing to report inappropriate conduct and sexual abuse by Edwards to law enforcement or external investigative agencies.

56.     As a direct result of OYA's negligence, Plaintiff has suffered economic and noneconomic damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants on each of his Claims and respectfully requests that this Court:

A.      permit Plaintiff leave to amend this Complaint after reasonable discovery;

B.      empanel a jury to try all issues so triable;

C.      award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff is entitled;

D.      award pre-judgment and post-judgment interest on such monetary relief;

E.      grant appropriate injunctive and/or declaratory relief;

GRUBE || OREHOSKI PLLC
1200 FIFTH AVENUE, SUITE 1711
SEATTLE, WASHINGTON 98101
(206) 770-7606 • FAX (206) 770-7607

F.    award reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

G.    grant such further relief that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a trial by jury as to all matters so triable.

Dated: May 11, 2026.

GRUBE OREHOSKI, PLLC

By: */s/ Joseph A. Grube*
Joseph A. Grube, OSB No. 962976

*Attorneys for Plaintiff*

SAUDER SCHELKOPF LLC

Joseph G. Sauder (to be admitted *pro hac vice*)
Joseph B. Kenney (to be admitted *pro hac vice*)
Melissa J. Stewart (to be admitted *pro hac vice*)

*Attorneys for Plaintiff*

COMPLAINT AND JURY DEMAND
PAGE 11 OF 11

GRUBE || OREHOSKI PLLC
1200 FIFTH AVENUE, SUITE 1711
SEATTLE, WASHINGTON 98101
(206) 770-7606 • FAX (206) 770-7607